# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

EXPRESS PHONE SERVICE INC,

    Plaintiff,

v.                                                                  CASE NO. 1:12-cv-00197-MP-GRJ

FLORIDA PUBLIC SERVICE COMMISSION;
RONALD A. BRISÉ, in his official capacity as the
Chairman of the Florida Public Service Commission;
LISA POLAK EDGAR, ART GRAHAM,
EDUARDO E. BALBIS, AND JULIE I. BROWN,
in their official capacities as Commissioners of the
Florida Public Service Commission; and
BELLSOUTH TELECOMMUNICATIONS, LLC,
d/b/a AT&T FLORIDA d/b/a AT&T SOUTHEAST,

    Defendants.

_____/

## **O R D E R**

This matter is before the Court on Plaintiff's appeal from a decision of the Florida Public Service Commission ("FPSC") pursuant to 47 U.S.C. § 252(e)(6). Express Phone Service, Inc. ("Express Phone") appeals the FPSC's ruling that Express Phone was bound by the terms of its 2006 interconnection agreement with Defendant BellSouth Telecommunications, LLC, d/b/a AT&T Florida d/b/a AT&T Southeast ("AT&T"), and that Express Phone could not adopt a new interconnection agreement while concurrently in breach of its existing agreement with AT&T (the "Final Order").[1] Upon consideration of the issues presented, the Court affirms the decision of the FPSC.

---

[1] *In re: Notice of adoption of existing interconnection, unbundling, resale, and collocation agreement between BellSouth Telecommunic'ns, Inc. d/b/a AT&T Fla. d/b/a AT&T Southeast and Image Access, Inc. d/b/a NewPhone, Inc. by Express Phone Serv., Inc.,* 2012 Fla. PUC LEXIS 374 (2012) (Order No. PSC-12-0390-FOF-TP).

## I. BACKGROUND

The Telecommunications Act of 1996 (the "Act") "created 'a new telecommunications regime designed to foster competition in local telephone markets.'" *Nixon v. Missouri Mun. League*, 541 U.S. 125, 124 S.Ct. 1555, 158 L.Ed.2d 291 (2004) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 638, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)). The Act requires incumbent local exchange carriers ("ILECs"), such as AT&T, to lease unbundled network elements to competitive local exchange carriers ("CLECs"),[2] such as Express Phone. Once a CLEC requests to lease network elements from an ILEC and the terms of their relationship are set through negotiation, arbitration or adoption, the parties memorialize those terms in an interconnection agreement ("ICA").

The Act permits a CLEC to adopt an existing ICA between an ILEC and another CLEC. *See* 47 U.S.C. § 252(i). Initially, through the Federal Communications Commission's ("FCC") implementation of § 252(i) pursuant to 47 C.F.R. § 51.809, a CLEC could "pick and choose" individual terms from other ICAs to incorporate into its existing agreement. In 2004, the FCC amended § 51.809 to eliminate "pick and choose" and, instead, implemented an "all or nothing" approach, which limits a CLEC to adopting only an approved ICA in its entirety. *See* 47 C.F.R. § 51.809.

State public service commissions are vested with the authority to approve or reject interconnection agreements reached by carriers. *See* 47 U.S.C. § 252(a)(1). The commissions may also arbitrate disputes between the carriers about their interconnection agreements or arbitrate the

---

[2] While "incumbent local exchange carrier" is defined in the Act, 47 U.S.C. § 251(h), "competitive local exchange carrier" is not. The latter term is synonymous with what the Act refers to as a "requesting carrier." *See, e.g.*, 47 U.S.C. § 251(c).

terms and rates if no agreement is reached. *See* 47 U.S.C. § 252(b). In this way, the states' role in local telephone regulation is preserved and the public service commissions are free to act in accordance with state interests, so long as those interests are not contrary to the Act and FCC regulations. *See* 47 U.S.C. §§ 251(d)(3), 261.

A. *The Express Phone Interconnection Agreement*

Pursuant to § 252(a)(1) of the Act, Express Phone and AT&T negotiated and entered into an interconnection agreement in 2006 (the "Express Phone ICA"), which had an initial term of five years and was approved by the FPSC in early 2007. (R. at pp. 35, 563, 1257, 1259.) The agreement set forth the terms under which AT&T would provide wholesale service to Express Phone for resale to its retail customers. (Document 1, p. 6, ¶13; Document 7, p. 3, ¶13.) The Express Phone ICA provided, *inter alia*, that Express Phone would "make payment to [AT&T] for all services billed including disputed amounts," or risk disconnection of its service. (R. at pp. 1265-68, Attach. 3, § 1.4.)

In 2009, Express Phone began withholding payment of disputed amounts, in violation of the "pay and dispute" terms of the Express Phone ICA. (*See, e.g.*, R. at pp. 1390-92.) Following negotiations between the parties in August and September 2010 regarding an increased security deposit (R. at pp. 437:23-438:25, 1390-97), Express Phone sent a letter to AT&T on October 20, 2010, seeking to adopt an interconnection agreement between AT&T and a third-party CLEC, Image Access, Inc. d/b/a NewPhone (the "NewPhone ICA") (R. at pp. 1160-66). The NewPhone ICA contained different payment provisions, including a "withhold and dispute" clause that Express Phone sought to obtain. (*See* R. at pp. 433:22-434:2.) That ICA was filed with the FPSC in April 2006 and was approved by the FPSC in July 2006, prior to the execution and adoption of the Express Phone ICA. (*See* R. at pp. 421:9-423:24.) The NewPhone ICA was available for adoption at the

time Express Phone negotiated and adopted its interconnection agreement with AT&T.

At the time Express Phone sent the October 20, 2010, letter to AT&T seeking to adopt the NewPhone ICA, it had a past due balance of over $850,000, with nearly thirteen months remaining until the expiration of the Express Phone ICA. (*See* R. at pp. 605:21-22, 638:1-15.) By its terms, the Express Phone ICA limited negotiations for a successor agreement to begin no earlier than the beginning of February 2011. (R. at pp. 1259, 638:11-15.) On November 1, 2010, AT&T responded by letter denying Express Phone's attempt to adopt the more favorable NewPhone ICA and indicated that the Express Phone ICA was still in effect. (*See* R. at pp. 1167-1168, 660:1-7.) In February 2011, AT&T began formal collection action by sending Express Phone a breach notice (*see* R. at pp. 606:28-607:4), to which Express Phone responded by letter in March 2011, again requesting that it be allowed to adopt the NewPhone ICA. (R. at pp. 1169-1177.)

At the time Express Phone sent the March 2011 responsive letter to AT&T, it had a past due balance of over $1.3 million (*see* R. at p. 606:26-27), and the Express Phone ICA now permitted negotiations for a successor agreement. AT&T conditionally accepted Express Phone's adoption request in March 2011, conditioned (among other things) on Express Phone curing its non-payment breach by paying all past due amounts, including disputed amounts. (R. at pp. 1178-79, 660:12-18.) Express Phone filed a complaint with the FPSC against AT&T in March 2011 (R. at pp. 221, 652), and filed notice on March 29, 2011, that it had adopted the NewPhone ICA, effective immediately. (R. at p. 1.) Thereafter, AT&T filed with the FPSC its objection and non-consent to Express Phone's adoption of the NewPhone ICA. (R. at p. 6.) After the FPSC denied Express Phone's emergency motion to prevent AT&T from disconnecting service pursuant to the Express Phone ICA, AT&T disconnected service. (R. at p. 1341.)

On April 4, 2011, Express Phone filed with the FPSC an amended notice of its adoption of

the NewPhone ICA, identifying the effective date of the adoption as October 20, 2010—*i.e.*, the date of its original letter to AT&T seeking adoption—rather than the March 29, 2011, effective date identified in its Notice of Adoption that same day. (R. at p. 8.) AT&T again denied Express Phone's adoption request until its non-payment breach was cured. (R. at p. 1185.) AT&T also filed a Response in Opposition to Express Phone's Amended Notice of Adoption. (R. at p. 134.) On April 12, 2011, Express Phone filed a Motion for Summary Final Order, asking the FPSC to find its adoption of the NewPhone ICA was valid and to order AT&T to reinstate service. (R. at p. 31.) On July 6, 2011, the FPSC denied Express Phone's motion and adoption of the NewPhone ICA. (R. at p. 220.) Three weeks later, Express Phone requested a formal administrative hearing pursuant to Fla. Stat. §§ 120.569 and 120.57, regarding the denial of its adoption of the NewPhone ICA. (R. at p. 235.)

*B. The FPSC Decision*

The FPSC held an evidentiary hearing on May 3, 2012, during which it heard testimony from both parties and received 45 exhibits into the record. (R. at pp. 357-1489.) The record shows that Express Phone began accruing past due amounts in 2007 (R. at p. 1272), and by March 1, 2012, had accrued a past due balance in excess of $1.4 million. (R. at p. 608.) The record also includes testimony from Express Phone expert witness Don Wood, who agreed that an interconnection agreement is a binding contract. (R. at pp. 543-44.)

On July 30, 2012, the FPSC issued its Final Order on Express Phone's Notice of Adoption. The FPSC found that Express Phone was bound by the 2006 ICA it entered with AT&T and that Express Phone was in "material breach" of the ICA by failing to pay "its disputed amounts as required by the terms and conditions [thereof]." (R. at 1575.) Additionally, the FPSC found that Express Phone's material breach "render[ed it] ineligible to adopt" the NewPhone ICA (or any other

ICA) until its "breach [was] remedied." (*Id.*) The FPSC reasoned that a "company bound by the terms and conditions of its signed interconnection agreement shall not be allowed to adopt an alternative interconnection agreement if the company is concurrently breaching its existing interconnection agreement." (*Id.*) Express Phone now seeks review of the FPSC's Final Order. All parties have filed briefs and on September 11, 2013 the Court held oral arguments, in which all parties participated.

## II. STANDARD OF REVIEW

Federal district courts have exclusive appellate jurisdiction to review determinations made by the state public service commissions. *See* 47 U.S.C. § 252(e)(6). *De novo* review applies to a state commission's interpretation of the meaning and import of the Act, while the arbitrary and capricious standard of review applies to a state commission's application of the Act. *See MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 112 F.Supp.2d 1286 (N.D. Fla. 2000). Furthermore, to the extent the FCC has issued an interpretive decision implementing the Act, the FCC's decision is entitled to "*Chevron*" deference, which means that the decision is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see also AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 384-87, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) (applying *Chevron* to FCC interpretations of the Act).

## III. DISCUSSION

Express Phone argues that the FPSC's determination that a CLEC must comply with a discriminatory term in its ICA before it may remedy that discrimination by adopting a more beneficial ICA is contrary to § 252(i) and § 51.809. (Doc. 21 at pp. 11-17.) In addition, Express Phone contends that the FPSC's ruling that a CLEC may not adopt a more preferable ICA unless it

first complies with discriminatory terms in its existing ICA is arbitrary and capricious. (Doc. 21 at pp. 18-21.) AT&T and the FPSC counter that ICAs are binding agreements and a breaching party may not unilaterally adopt another ICA until it cures its breach of the existing ICA. (Docs. 22 & 23.)

*A. Discriminatory Term in Express Phone ICA*

Express Phone's position is predicated on the notion that the "pay and dispute" provision of its ICA is discriminatory pursuant to § 252(i), as compared to the "withhold and dispute" provision of the NewPhone ICA. (Doc. 21.) In arguing that the latter ICA is more favorable, Express Phone points out that it is at a distinct disadvantage against its competitors who, like NewPhone, are able to withhold disputed amounts until their resolution. (*Id.* at 14, 27.) Express Phone argues that the "pay and dispute" provision creates an incentive for AT&T to overbill it, while the "withhold and dispute" provision creates an incentive for AT&T to work with NewPhone to resolve any outstanding disputes. (*Id.* at 14.) Express Phone also asserts that these incentives are not speculative because when AT&T had a billing dispute with NewPhone, AT&T negotiated and reached agreement with NewPhone, but refused to do the same with Express Phone. (*Id.* at 14.)

In contrast, the FPSC argues that the anti-discrimination provisions of the Act—*i.e.*, § 251(b) and (c)— do not apply to negotiated agreements like the Express Phone ICA made pursuant to § 252(a)(1) because that section "specifically provides that the nondiscrimination requirements of § 251(b) and (c) do not apply to § 252(a)(1) negotiated interconnection agreements." (Doc. 22 at p. 18.) Section 252(a)(1) provides that "an [ILEC] may negotiate and enter into a binding agreement with the [CLEC] without regard to the standards set forth in subsections (b) and (c) of section 251." 47 U.S.C. § 252(a)(1). Section 252(i) merely provides that an ILEC shall make available any interconnection agreement to any CLEC upon the same terms and conditions. 47 U.S.C. § 252(I).

The fact that disparate terms may exist among various ICAs does not alone render an ICA with an unfavorable term discriminatory. Indeed, "'[e]qual terms and conditions' and 'nondiscriminatory access' do not mean identical agreements." *NuVox Comms., Inc. v. Edgar*, 511 F.Supp.2d 1198, 1209 (N.D. Fla. 2007). The Act "does not require that all interconnection agreements be identical." *MCI Telecomms. Corp. v. Mich. Bell Tel. Co.*, 79 F.Supp.2d 768, 776 (E.D. Mich. 1999); *see also Levine v. BellSouth Corp.*, 302 F.Supp.2d 1358, 1372 (S.D. Fla. 2004) (holding that it is not unreasonable to treat Louisiana customers differently than customers from other states when Louisiana regulation requires it). Different agreements can contain different types of burdens and benefits, as long as the benefits equal out the burdens. *NuVox*, 511 F.Supp.2d at 1209 (citing *BellSouth Telecomms., Inc. v. FCC*, 469 F.3d 1052, 1060 (D.C. Cir. 2006)). This is particularly so in light of the FCC's "all or nothing" rule, which limits a CLEC to adopting a state commission-approved agreement in its entirety, rather than selected provisions thereof. 47 C.F.R. § 51.809(a).

Thus, even though the NewPhone ICA's "withhold and dispute" provision may have been more favorable than the Express Phone ICA's "pay and dispute" provision, this difference alone does not rise to the level of discrimination contemplated by the Act. As AT&T points out, New Phone's affiliate, Digital Express, Inc., itself has argued that the NewPhone ICA is discriminatory with respect to its security deposit provisions. (Doc. 23 at n.14; *see* FPSC, Docket No. 120169-TP.) Even assuming the anti-discrimination provisions of the Act did apply in this context and in light of the parties' prior dispute regarding the security deposit provision of the Express Phone ICA, the balancing of burdens and benefits between the Express Phone ICA and the NewPhone ICA militates against a determination that the "pay and dispute" provision of the Express Phone ICA was discriminatory.

*B. Binding Nature of ICA's*

Express Phone next asserts that the FPSC's determination that it must first cure its breach by complying with the "pay and dispute" provision of its existing ICA before it can adopt another ICA "creates a regulatory 'Catch 22.'" (Doc. 21 at p. 17.) Specifically, the crux of Express Phone's argument is that its ability to adopt a preferential ICA is the specific statutory remedy provided for the alleged discrimination it experienced. (*Id.*) On the other hand, the FPSC and AT&T argue that the Act does not permit Express Phone to unilaterally cancel its existing ICA and adopt another one while in breach, as ICAs are binding agreements. (Doc. 22 at p. 16; Doc. 23 at p. 15.) Having already addressed the discrimination issue, above, this Court rejects Express Phone's argument that the FPSC's order "authorizes and institutionalizes the very discrimination that § 252(i) and Rule 51.809 were designed to prevent." (Doc. 21 at p. 17.)

Once an interconnection agreement is approved by the state commission, the Act requires the parties to abide by its terms. *See Verizon Md., Inc. v. Global NAPs, Inc.,* 377 F.3d 355, 364 (4th Cir. 2004); *Fernandes v. Manugistis Atlanta, Inc.,* 582 S.E.2d 499, 502 (Ga. Ct. App. 2003) ("Where the language of the contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance."); *Medical Ctr. Health Plan v. Brick,* 572 So. 2d 548, 551 (Fla. 1st DCA 1990) ("A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract.") (citation omitted). Moreover, a party is bound by a contract provision, even if it is somehow perceived to be harsh or unfair. *See Berry v. Travelers Ins. Co.*, 14 S.E.2d 196, 202 (Ga. Ct. App. 1991); *Applica Inc. v. Newtech Electronics Indus., Inc.*, 980 So. 2d 1194, 1194 (Fla. 3d DCA 2009).

The Express Phone ICA was voluntarily entered into by the parties after negotiation and subsequently approved by the FPSC. (R. at 1, 35, 31-32, 35, 1257, 1259.) Accordingly, it is a

"binding agreement" pursuant to § 252(a)(1). *See McLeodUSA Telecommunic'ns Servs., Inc. v. Iowa Utils. Bd.*, 550 F. Supp. 2d 1006, 1029 (S.D. Iowa 2006). The Court notes that Express Phone itself conceded that an ICA is a binding contract. (R. at pp. 543-44.) As the FPSC appropriately determined, Express Phone's failure to pay the disputed amounts to AT&T was a material breach of its ICA.

*C. Concurrent Breach Precludes Adoption*

Again relying on § 252(i), Express Phone argues that it is entitled to upgrade its existing ICA at any time and for whatever reason, since that section of the Act entitles all CLECs to "most favored nation" status. (Doc. 24 at p. 2). Notably, and relevant to the FPSC's Final Order, Express Phone extends the foregoing logic to a situation in which a CLEC is concurrently in breach of its existing ICA while seeking adoption of another ICA. (*See, e.g.*, Docs. 21 & 24.) As discussed above, the Express Phone ICA is a binding agreement and § 252(i) does not relieve a party thereunder from its obligations, particularly when that party is in breach.

In determining the meaning of § 252(i), the section must be read in light of the structure and intent of the Act. *See Global NAPs, Inc. v. Verizon New England, Inc.,* 396 F.3d 16, 24 (1st Cir. 2005), *cert. denied,* 544 U.S. 1061 (2005). In *Global NAPs*, a case involving a § 252(b) interconnection agreement arbitration order, Global NAPs, the CLEC, argued that because § 252(i) does not expressly state when and under what circumstances the ILEC must make interconnection agreements available to other competitors, it was free to opt into an alternative agreement at any time it chooses. *Id*. at 24. The court disagreed, finding that the CLEC's reading brought § 252(i) in direct conflict with, and in important aspects negated, provisions of §251(b) and (c) of the Act. *Id*. at 24-26. The court affirmed the state commission's determination that § 252(i) could not be read to allow Global NAPs to avoid the terms of the binding arbitration order by opting into an

interconnection agreement which had been available to it throughout the entire period of negotiation and arbitration. *Id*. at 28.

While this Court notes that the Express Phone ICA was not subject to arbitration, the reasoning advanced by the First Circuit in *Global NAPs* is nonetheless persuasive. The NewPhone ICA was available for adoption at the time Express Phone entered into its ICA with AT&T in 2006, but Express Phone neglected to adopt the NewPhone ICA at that time. (*See* R. at pp. 421:9-423:24.) Instead, Express Phone waited to seek adoption of the NewPhone ICA until it was in breach of its existing ICA, which was nearly one year away from its expiration. Even if the "pay and dispute" provision in the Express Phone ICA was discriminatory as compared to the NewPhone ICA's "withhold and dispute" provision, this would not entitle Express Phone to adopt the NewPhone ICA in the manner it sought (*i.e.*, while in material breach). Accordingly, the FPSC properly held that adoption of another ICA is precluded during a party's concurrent breach of an existing ICA.

*D. Final Order as Arbitrary and Capricious*

Next, Express Phone asserts that the FPSC's determination that it would be bad public policy to permit Express Phone to adopt the NewPhone ICA until it cured its breach of the existing ICA is arbitrary and capricious. (Doc. 21 at pp.18-22.) The arbitrary and capricious standard is exceedingly deferential, and the Court is not authorized to substitute its judgment for the FPSC's as long as the FPSC's conclusions are rational. *See Pub. Serv. Tel. Co. v. Ga. Pub. Serv. Comm'n*, 404 F. App'x. 439, 441 (11th Cir. 2010); *Atlanta Gas Light Co. v. Fed. Energy Regulatory Comm 'n,* 140 F.3d 1392, 1397 (l1th Cir. 1998) (concluding that an agency's findings will be overturned only if it is shown that there is "no rational connection between the facts and the choice made," or if the decision was not based on consideration of "relevant factors" or "there has been a clear error of judgment").

After review of the record, the Court finds there is sufficient evidence establishing the FPSC's reasoned basis for denying Express Phone's adoption of the NewPhone ICA. The FPSC enforced the "pay and dispute" provision of the Express Phone ICA as it had done for numerous prior other interconnection agreements and as other state commissions have done as well. (R. at pp. 650-53, 1295-96, 1298, 1305-06, 1323.) *See, e.g.*, *In re: Complaint and petition for relief against Life Connex Telecom, LLC f/k/a Swiftel, LLC by BellSouth Telecommunic'ns, Inc. d/b/a AT&T Fla.*, 2010 Fla. PUC LEXIS 515, *11, 15-16 (2010) (Order No. PSC-10-0457-PCO-TP); *In re: Request for emergency relief and complaint of FLATEL, Inc. against BellSouth Telecommunic'ns, Inc. d/b/a AT&T Fla. to resolve interconnection dispute*, 2012 Fla. PUC LEXIS 50, *10 (2012) (Order No. PSC-12-0085-FOF-TP). The FPSC's rejection of Express Phone's adoption as contrary to the public interest was not without consideration of relevant facts or the result of a clear error in judgment. Accordingly, the FPSC's justification and reasoning for the decisions in its Final Order are not arbitrary and capricious.

## IV. CONCLUSION

The FPSC correctly concluded that interconnection agreements voluntarily negotiated pursuant to § 252(a)(1) are binding on the parties to those agreements, and that Express Phone was bound by the terms of its 2006 interconnection agreement with AT&T, such that Express Phone could not adopt a new interconnection agreement (*e.g.*, the NewPhone ICA) while concurrently in breach of its existing agreement with AT&T. As such, the FPSC's Final Order is affirmed.

Since the FPSC determined that Express Phone was in material breach of its ICA during all relevant times and its Final Order is limited to the context of an adoption during a concurrent breach by the adopting party, this Court's decision does not address adoption where there is no breach and should not be viewed in that light.

Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

The Final Order of the Florida Public Service Commission is AFFIRMED.

**DONE AND ORDERED** this   *12th* day of December, 2013

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge
